## A11A2355. HEARN v. DOLLAR RENT A CAR, INC. et al.
### (726 SE2d 661)

BOGGS, Judge.

In this appeal, Minnie Hearn asserts that the trial court erred in granting summary judgment in favor of Dollar Rent A Car, Inc. ("Dollar"), York STB, Inc. ("York"), and DTG Operations, Inc. ("DTG") in this case involving an alleged breach of a settlement agreement. Hearn also contends that the trial court erred in awarding OCGA § 9-15-14 attorney fees against her and her attorney in two separate orders. For the reasons explained below, we affirm the portion of the trial court's order granting summary judgment in favor of Dollar, reverse the remainder of the trial court's summary judgment order, and vacate both of the orders awarding attorney fees.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant or denial of summary judgment, we apply a de novo standard of review, and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the non-movant. *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

> A *defendant* may [prevail on summary judgment] by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations omitted; emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

## Statement of Facts

The record shows that Minnie Hearn filed her complaint against DTG, York, and Dollar based upon a dispute as to whether a $20,000 settlement check should include Medicare as a payee. The settlement arose from a November 28, 2002 automobile accident in which the driver of a car rented from DTG struck Hearn's vehicle. DTG "contractually retained York as an independent Third Party Administrator ('TPA') to handle claims in Georgia against DTG's renters."

During settlement discussions between Hearn's attorney, Guy Michaud, and a claims adjuster with York, the issue of Medicare's involvement arose. According to the claims adjuster, she relied upon Michaud's representation that Medicare did not have an enforceable lien when she agreed not to include Medicare as a payee on the check.[1]

Michaud provides a different version of events. In his deposition, he explained that "from day one" he and the claims adjuster both knew that Hearn had been on disability and that Medicare paid some of her bills relating to the accident. In support of this claim, Michaud points to the medical bills that he provided to the claims adjuster in May 2004 that indicated that Medicare had made adjustments, write-offs, and payments.

On October 5, 2004, the claims adjuster offered in writing to settle Hearn's claim for $20,000. There was no mention of Medicare

---

[1] Specifically, she averred in her affidavit:

. . .

5. During the course of our settlement negotiations, the subject arose as to whether Medicare might have any lien, right of reimbursement, or other claim with respect to the proceeds. Attorney Michaud told me flatly that Medicare had no enforceable claim of any kind. (Emphasis omitted.)

6. In reliance upon Attorney Michaud's assurances with respect [sic] the absence of any possible claims by Medicare, I sent Attorney Michaud a form Release for Ms. Hearn's signature, and I requested issuance of a settlement check in the agreed amount, with Ms. Hearn and Attorney Michaud as the only payee.

7. Shortly thereafter, as part of our standard procedure before settlement checks are put in the mail, the file and settlement terms were reviewed by my then-supervisor, Mary Susic. Ms. Susic noticed and pointed out to me that certain medical records that had been sent to us by Attorney Michaud himself indicated that some of Ms. Hearn's medical expenses from the accident of November 28, 2002, had in fact been paid by Medicare. This necessarily meant that, in direct contradiction to what Attorney Michaud's representations to me [sic], Medicare did have a right of reimbursement that would be enforceable not merely against Ms. Hearn, but also against any third party payor who ignored that right of reimbursement. (Emphasis omitted.)

8. In order to protect against any possibility that Medicare might accuse York, DTG, and/or [the rental car driver] of ignoring Medicare's claims, or being complicit in any alleged attempt by Ms. Hearn and/or Attorney Michaud to defraud Medicare with respect to such claims, I requested that the settlement check be re-issued with Medicare as an additional payee, along with Ms. Hearn and Attorney Michaud. That settlement check was then forwarded to Attorney Michaud.

being an additional payee on any settlement check in this letter. In a letter sent to the adjuster on November 17, 2004, Michaud confirmed a $20,000 settlement agreement reached in a telephone conversation the same day and requested that she "forward the draft and release as soon as possible." This letter makes no mention of Medicare as an additional payee on the settlement check.

Michaud testified that before he sent his November 17, 2004 letter, he discussed Medicare with the adjuster. Because neither of them had received any notice and were not aware that Medicare was asserting its right of reimbursement, they "agreed that the check — the settlement draft would not have Medicare on it." He explained that when parties receive written notice from Medicare that it plans to seek reimbursement, it is commonly referred to as a lien, and that he and the adjuster agreed that there was "no lien" in connection with Hearn's injury. He also testified that it was his belief that he had no duty to notify Medicare of the settlement if Medicare had not notified anyone of its intent to seek reimbursement. He would take steps to protect his client, however, by holding back a portion of the settlement in a trust account to satisfy any claim that might be made by Medicare after completion of the settlement. In his experience, if Medicare does not assert a claim within two years of an injury, "usually they don't come back at all."

Michaud testified that the adjuster agreed to provide the settlement check with a copy of the release for his client to sign, but he received the release only. When he called the adjuster, she explained that her supervisor instructed her to wait to issue the settlement check until after they received a signed release. Michaud testified that the adjuster agreed that "we still have an agreement Medicare is not involved; they never filed a lien."

Five days before the expiration of the statute of limitation on her personal injury claim, Hearn signed the release, which included her agreement to indemnify against "all further liability, loss, damage, claims of subrogation and expense." She also agreed to release "known and unknown liens including Medicare." After returning the executed release to the adjuster, Michaud received a check that included Medicare as a payee. When he called the claims adjuster, she informed him "there's nothing she could do and [he would] have to talk to her supervisor."

When the supervisor failed to return his phone calls, Michaud sent a letter to the claims adjuster stating:

> This will confirm this morning's conversation regarding the settlement check. Medicare is not a party, has no interest, had never filed a lien, and it is too late to file one now. The

check is not negotiable, useless. Also, if you'll read line 11 of your release, you are protected against any Medicare liens, if any.

Please reissue the check & leave out Medicare.

York did not comply with Michaud's request.

*Proceedings Below*

Hearn, with new counsel, filed a complaint for breach of the settlement agreement against Dollar, DTG, and York. When Hearn's counsel learned that defense counsel, Frank Harris, contacted Medicare shortly after the lawsuit was filed and "notifi[ed] it of a claim in this case,"[2] he amended the complaint to assert a claim against Harris based upon the theory that Harris became an "active participant in the deeds of his clients." Harris moved to strike the amended complaint adding him as a party defendant because Hearn did not seek leave of court. Harris also moved to dismiss the amended complaint for failure to state a claim and sought attorney fees under OCGA § 9-15-14. The trial court struck the amended complaint because leave of court to amend had not been obtained under OCGA §§ 9-11-15 (a) and 9-11-21.[3] It also granted Harris's motion for sanctions and concluded that "attorney[ ] fees will be awarded in an amount to be determined." The trial court held a hearing on April 24, 2009, "concerning the appropriate amount of fees to be awarded."[4] In an order dated May 1, 2009, the trial court awarded Harris $1,775 in attorney fees under OCGA § 9-15-14. This order did not include any findings of fact in support of the award.

Dollar, DTG, and York subsequently moved for summary judgment in their favor with regard to Hearn's claim for breach of the

---

[2] The defendants attached to their answer a March 23, 2005 letter from Medicare stating: "Attached is your file copy of Medicare's right of recovery letter sent to the attorney representing the above beneficiary in this matter. If you have any questions regarding this case please contact the attorney and/or lead contractor identified on the attached. A copy of this notice has also been sent to the beneficiary." The letter was sent to "York Claims Service . . . c/o Frank Harris" and listed Hearn as the beneficiary in the re line. The letter does not list a specific reimbursement amount claimed by Medicare.

[3] Hearn does not contend in this appeal that the trial court erred by striking her amended complaint. Although she filed previous notices of appeal during the pendency of this case in connection with this order, this Court dismissed them based upon her failure to comply with the interlocutory appeal procedures contained in OCGA § 5-6-35.

[4] The record before us does not include a transcript of this hearing although it was requested by Hearn in her notice of appeal.

settlement agreement. The trial court granted the defendants' summary judgment motion and also awarded them attorney fees and expenses of litigation under OCGA § 9-15-14. The trial court concluded that any agreement not to include Medicare as a payee was unenforceable because York relied upon an erroneous assurance by Michaud that "Medicare had no enforceable claim of any kind." The trial court found that York was entitled to add Medicare as a payee on the check as a good business practice when it "subsequently realized that Michaud's statement was incorrect." Additionally, the trial court found that it would not assist the "Plaintiff to evade her duty to reimburse Medicare" because doing so "would clearly contravene the public policy in favor of reimbursement." The trial court also concluded that Dollar was entitled to summary judgment in its favor because it "had no involvement in this case." Finally, the trial court concluded that DTG was entitled to summary judgment because York settled the claim as an independent contractor for whom DTG could not be held liable.

In the same order, the trial court further ruled that all of the defendants were entitled to attorney fees under OCGA § 9-15-14 because Hearn and her counsel did "not provide the Court with any authority for the proposition that Defendants ever were, or ought now to be, required to act upon Michaud's erroneous representation and/or to ignore the clear indications in Plaintiff's medical records that Medicare had an interest in the outcome of this case."

### Review of Summary Judgment

1. We first consider whether the trial court properly concluded in its summary judgment order that DTG and Dollar could not be held liable for any breach of contract, that Hearn had no valid claim for breach of the settlement agreement, that public policy would preclude enforcement of an agreement to omit Medicare as a payee, and that Hearn suffered no damages from any alleged breach of contract.

(a) *Summary judgment as to DTG.* Hearn contends the trial court erred by granting summary judgment in favor of DTG on the ground that it could not be held liable for the conduct of its independent contractor, York, in settling the claim. A claims manager for York provided an affidavit in which she explained that "[b]oth financially and administratively, the responsibility for administering and settling Georgia claims began and stayed with DTG." But she also explained that "DTG . . . contractually retained York as an independent Third Party Administrator ('TPA') to handle claims in Georgia against DTG's renters." Under this arrangement, York and its employees had complete discretion and authority to enter into settlement

negotiations and actual settlements without any input from DTG or any other entity. This authority included issuing and signing settlement checks. "York and its personnel were operating pursuant to the standing authority described above" when York negotiated the settlement agreement and later issued a check that included Medicare as a payee.

Hearn contends that issues of fact exist with regard to DTG's liability because the settlement check that included Medicare as a payee listed DTG as the payor and that this check raises an issue of fact as to DTG's involvement in the settlement. While we conclude that the trial court erred by granting summary judgment in favor of DTG, we do so for a different reason.

This is a breach of contract action, not a tort suit, and it appears from the record that DTG is the principal responsible for paying the agreed-upon settlement amount negotiated by its agent, York. See OCGA § 10-6-1 (defining principal-agent relationship). The record shows that DTG was obligated to pay any settlement amounts negotiated by its agent, York, and that issues of fact remain as to whether DTG issued payment according to the terms of the settlement agreement, which are also disputed. A principal is "bound by all the acts of his agent within the scope of his authority." OCGA § 10-6-51. "Essentially an agent has authority to establish contractual relations with third parties and his principal." *Remediation Svcs. v. Ga.-Pacific Corp.*, 209 Ga. App. 427, 430-431 (1) (433 SE2d 631) (1993). Because the record shows without dispute that York acted within the scope of its authority by entering into a settlement contract with Hearn on behalf of DTG, the trial court erred by granting summary judgment in DTG's favor in this breach of contract action.

(b) *Summary judgment as to Dollar.* The trial court properly granted summary judgment in favor of Dollar, however, based upon evidence in the record showing that the rental car in the accident was owned by DTG, not Dollar, and that York was not acting on behalf of Dollar when it settled the case. Cf. *Summit Automotive Group v. Clark*, 298 Ga. App. 875, 882-884 (4) (681 SE2d 681) (2009) (franchisor not liable for acts of franchisee "merely because of the franchisor/franchisee relationship").

(c) *Summary judgment as to DTG and York.* Hearn contends issues of material fact exist with regard to the terms of the settlement agreement and DTG and York's breach of the agreement.

> In deciding whether the parties entered into an enforceable settlement agreement, we are governed by well-established principles. Compromises of doubtful rights are upheld by

general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence. In considering the enforceability of an alleged settlement agreement, however, a trial court is obviously limited to those terms upon which the parties themselves have mutually agreed. Absent such mutual agreement, there is no enforceable contract as between the parties. It is the duty of courts to construe and enforce contracts as made, and not to make them for the parties.

(Citations, punctuation and footnote omitted.) *Anderson v. Benton*, 295 Ga. App. 851, 854 (1) (673 SE2d 338) (2009). In this case, the parties agree that one of the terms of the settlement contract was that Medicare would *not* be included as a payee on the settlement check. They disagree, however, about the claims adjuster's knowledge with regard to the existence of a right of reimbursement by Medicare. The claims adjuster contends she relied upon Michaud's representation "that Medicare had no enforceable claim of any kind." Michaud on the other hand, asserts that both he and the claims adjuster were aware of the Medicare payments, but mutually agreed not to include Medicare as a payee because it had not notified anyone of its intent to seek reimbursement. Issues of fact therefore exist with regard to whether Michaud made any misrepresentation to the claims adjuster. See *Lloyd v. Kramer*, 233 Ga. App. 372, 375 (1) (503 SE2d 632) (1998) (party not entitled to summary judgment; issue of fact remained on whether alleged misrepresentation made to obtain written consent); *McReynolds v. Krebs*, 307 Ga. App. 330, 336 (4) (705 SE2d 214) (2010) (settlement agreements must fulfill same requirements for enforceability as other contracts); *Dyer v. Honea*, 252 Ga. App. 735, 739 (3) (a) (557 SE2d 20) (2001) (outlining remedies available for fraudulent inducement to enter into contract).

Questions of fact also exist regarding the reasonableness of the claims adjuster's reliance on any alleged misrepresentations by Michaud. The decision to change the agreed-upon payees on the settlement check was made after a supervisor reviewed medical records that had been in possession of the claims adjuster for over six months. See *Northwest Plaza v. Northeast Enterprises*, 305 Ga. App. 182, 191 (3) (a) (699 SE2d 410) (2010) ("[i]ssues of justifiable reliance and proper due diligence are generally for the jury"). The trial court therefore erred in accepting York's version of the facts to conclude that Hearn had no valid claim for breach of the settlement agreement.

(d) *Summary judgment on issue of public policy.* Our analysis does not end here, however, because we must also determine whether the trial court properly concluded, in the alternative, that public

policy precludes enforcement of any agreement to omit Medicare as a payee on a settlement check when the parties have knowledge of a potential Medicare claim. Before addressing the propriety of the trial court's ruling, we will review the law regarding Medicare's right of reimbursement, as well as its impact upon settlement agreements. As one court has noted,

> this is hardly the first settlement to be derailed because of unresolved questions relating to Medicare liens. Rarely, these have led to published decisions. [Cit.] More frequently, they have simply led to frustration and misunderstanding. Counsel would therefore be well advised to be aware of developments in this area of law and take them into account in fashioning unambiguous settlement agreements.

*Hackley v. Garafano*, 2010 Conn. Super. LEXIS 1669, at *15 (D. New Haven, Case No. CV095031940S, decided July 1, 2010).

Under 42 USC § 1395y (b) (2) (B) (i), Medicare may conditionally pay the medical bills of an injured person, subject to Medicare's right to obtain reimbursement of those payments. The Centers for Medicare and Medicaid Services (CMS)[5] "has a direct right of action to recover from any primary payer" amounts paid by Medicare. 42 CFR § 411.24 (e); 42 USC § 1395y (b) (2) (B) (ii). "Primary payer" is defined to include "any entity that is or was required or responsible to make payment . . . under a primary plan," 42 CFR § 411.21, and "primary plan" is broadly defined to include "a group health plan or large group health plan, a workers' compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan), or no-fault insurance." 42 CFR § 411.21. "Primary payment means, when used in the context in which Medicare is the secondary payer, payment by a primary payer for services that are also covered under Medicare." 42 CFR § 411.21.

CMS also "has a right of action to recover its payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment." 42 CFR § 411.24 (g). "If the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days." 42 CFR § 411.24 (h).

---

[5] 66 Fed. Reg. 35437.

In the case of liability insurance settlements and disputed claims under employer group health plans, workers' compensation insurance or plan, and no-fault insurance, the following rule applies: If Medicare is not reimbursed [within 60 days], the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.

42 CFR § 411.24 (i) (1). The above quoted paragraph also applies "if a primary payer makes its payment to an entity other than Medicare when it is, or should be, aware that Medicare has made a conditional primary payment." 42 CFR § 411.24 (i) (2). Additionally, CMS may obtain double damages in any suit to collect from a primary payer. 42 USC § 1395y (b) (2) (B) (iii).

Under this statutory and regulatory framework, York faced potential liability for both the amount of any Medicare lien and double this amount if Hearn failed to satisfy any such lien within 60 days of receiving the settlement check. See 42 CFR § 411.24 (h); *Toomer v. Allstate Ins. Co.*, 292 Ga. App. 60, 62-63 (663 SE2d 763) (2008). The issue before us, therefore, is whether summary judgment was appropriate under the alternative theory that public policy precludes enforcement of an agreement to omit Medicare as a payee on a settlement check, when both parties have knowledge that Medicare has a right to seek reimbursement.

There are no Georgia cases addressing this issue, and few cases from other jurisdictions touch upon it. One court has enforced a settlement agreement providing that Medicare would not be listed as a payee. See *Wright v. Liberty Med. Supply*, 2011 U. S. Dist. LEXIS 81621 (D. S.C. 2011). See also *Riccardi v. Strunk*, 2010 Conn. Super. LEXIS 186 (D. New London, Case No. CV085008671, decided January 22, 2010) (nothing in settlement agreement authorized insurer to add Medicare as a payee on check). Other courts have concluded that federal law does not require an insurance company to include Medicare as a payee. *Tomlinson v. Landers*, 2009 U. S. Dist. LEXIS 38683, at *14-16 (III) (2) (M.D. Fla. 2009). See also *Wisinski v. American Commerce Group*, 2011 U. S. Dist. LEXIS 320 (III) (A) (2) (c) (N.D. Pa. 2011) (insurer's insistence that Medicare be listed as payee on check when plaintiff agreed to indemnify against any Medicare claims supported bad faith claim against insurer). As one court has noted,

> there is no authority for an insurer's insistence that it protect a governmental agency's lien by making that agency a co-payee on a check tendered in payment of a judgment or

settlement. To the contrary, the recent case of *Zaleppa v. Seiwell*, 9 A.3d 632 (Pa. Super. 2010), stands for the proposition that, absent express authorization, private parties may not assert the interests of the government (in that case, Medicare) in a post-trial motion or any phase of litigation. Generally, putting an agency's name on a check as a co-payee is neither authorized or required under federal or state law, and quite obviously, is not an efficient way to resolve personal injury lawsuits. . . .

While an insurer has a responsibility to assure that governmental agency liens are taken into account, such responsibility is generally discharged by obtaining a written commitment by the plaintiff, either in a release document or in an independent document, to be responsible for the payment of all such liens. . . .

*McBride v. Brown*, 2011 Conn. Super. LEXIS 830 (D. New Haven, Case No. CV085021216S, decided April 4, 2011).

In the limited context of bad faith failure-to-pay claims against insurance companies, some courts have determined that, in the absence of an explicit agreement, it is reasonable for an insurer to list Medicare as a payee on a settlement check. See *Porter v. Farmers Ins. Co.*, 2012 U. S. Dist. LEXIS 9862 (II) (B) (B) (3) (N.D. Fla. 2012) (reasonable for insurer to initially list Medicare a co-payee on UM benefits check before issues regarding Medicare claim resolved); *Wilson v. State Farm &c. Ins. Co.*, 795 FSupp.2d 604, 607 (III) (W.D. Ky. 2011) (no bad faith when insurer sought to make Medicare a payee on check before paying limits of UM policy); *Lewis v. Allstate Ins. Co.*, 2006 Tex. App. LEXIS 2055 (Tex. Ct. App. 2006) (insurer did not breach obligation to pay UM benefits by listing Medicare as co-payee on check).

After reviewing and considering the Medicare reimbursement statutes and regulations relevant to the specific facts of this case, we conclude that public policy does not preclude a court from enforcing an agreement to omit Medicare as a co-payee on a settlement check where, as here, the plaintiff signed a release that acknowledged her responsibility to pay any Medicare claim and agreed to indemnify the released parties.[6] We express no opinion as to whether public policy

---

[6] Unlike the trial court, we are not persuaded that the reasoning of the Florida Court of Appeals' decision in *Pollo Operations v. Tripp*, 906 S2d 1101 (Fla. App. 2005), applies to the facts before us. In *Pollo Operations*, the plaintiff's attorney sought a check from the defendant

would be violated in the absence of an express acknowledgment of liability and/or an indemnity agreement.

(e) *Summary judgment on issue of damages.* The final alternative ground relied on by the trial court to grant summary judgment in favor of the defendants was its conclusion that Hearn incurred no damages from York's inclusion of Medicare as a payee on the settlement check. Specifically, the trial court found that the settlement check including Medicare as a payee "was fully negotiable as originally written. Thus the Court can discern no damage to Plaintiff from its having been written in that manner. Certainly, Plaintiff has never identified what her purported damages might be." We must therefore consider the trial court's damages analysis.

The proper remedy for breach of a settlement agreement is an action for breach of contract, which under proper circumstances may include a claim for specific performance. See *Gallagher v. The Fiderion Group*, 300 Ga. App. 434, 437 (1) (685 SE2d 387) (2009). Additionally, "[i]n every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." OCGA § 13-6-6. Based upon Hearn's right to seek specific performance of an express agreement regarding the payees to be listed on her settlement check, and the general right to seek nominal damages in breach of contract actions, we conclude that genuine issues of fact remain with regard to damages suffered by Hearn. Additionally, we note that Hearn has not yet received any funds, even though she executed a release of her personal injury claim as well as an indemnity agreement with regard to Medicare payments.

## Award of Attorney Fees

2. We next review the propriety of the trial court's orders of April 8, 2011 and May 1, 2009, awarding attorney fees against Hearn and her counsel.

(a) *Attorney fees incurred in defense of suit.* In its December 21, 2010 order granting summary judgment in favor of the defendants, the trial court concluded that the defendants were also "entitled to an award against Plaintiff and her counsel, pursuant to OCGA § 9-15-14

---

insured, as opposed to the insurer, based upon his belief that it would preclude Medicare from obtaining reimbursement. 906 S2d at 1102-1103. Based upon the express intent to circumvent Medicare reimbursement, the Florida Court of Appeals was "loath to permit the courts of this state to become blessing machines for such conduct." Id. at 1106. In this case, however, no evidence was presented of such a scheme.

(a), for attorney[ ] fees and expenses incurred by Defendants during the course of this case." Following a hearing on the amount of attorney fees to be awarded, on April 8, 2011 the trial court ordered that Hearn pay $5,000 and her attorney pay $35,000 to the defendants for the "reasonable and necessary value of the legal services provided in defense of this litigation." The order recited that the attorney fees and expenses were "merited on the grounds that the Plaintiff and her attorney . . . acted in a manner during the pendency of this litigation that lacked substantial justification, interposed delay, interposed harassment and unnecessarily expanded the proceeding."

Hearn contends that this attorney fees award should be vacated if we conclude that any portion of her suit presented justiciable issues or had a substantial basis. Based upon our conclusion that the trial court erred, in part, by granting summary judgment in favor of the defendants, we must vacate the trial court's attorney fees award. See *City of Albany v. Freeney*, 313 Ga. App. 24, 28 (2) (720 SE2d 349) (2011) (reversal of grant of summary judgment requires reversal of attorney fees award). Without more specific factual findings in the trial court's order, we cannot determine what portion of its award may relate to the claims for which we have concluded genuine issues of material fact exist. *Brewer v. Paulk*, 296 Ga. App. 26, 31 (2) (673 SE2d 545) (2009).[7] On remand, we direct the trial court to reconsider its April 8, 2011 award of attorney fees in light of our opinion and to enter a new judgment, from which an appeal by either party is authorized.

(b) *Attorney fees incurred in defense of amended complaint against defense counsel.* We must also vacate the trial court's May 1, 2009 order awarding attorney fees under OCGA § 9-15-14 because the trial court's order does not include the necessary findings of fact to support the award. See *Reese v. Grant*, 277 Ga. 799 (596 SE2d 139) (2004); *Dan J. Sheehan Co. v. The Fairlawn on Jones Homeowners Assn.*, 312 Ga. App. 787, 792 (3) (720 SE2d 259) (2011). "A judgment devoid of express findings of fact and conclusions of law as to the statutory

---

[7] In *Brewer*, we reversed the trial court's attorney fees award because [t]he trial court failed to specifically address each of the 12 counts of the complaint or to make a specific finding that *all* the claims were frivolous for the reasons stated in its order. Further, the trial court failed to apportion fees between those incurred in defending against the claims deemed frivolous and any that were not. Therefore, we cannot tell from the court's order what amount of fees would be appropriate with respect to Bobby Brewer's claim on a debt or as to any other remaining claim. As we have held in cases involving OCGA § 9-15-14 (a) or (b), the trial court must limit the fees award "to those fees incurred because of [the] sanctionable conduct." Lump sum or unapportioned attorney fees awards are not permitted in Georgia. (Citations and punctuation omitted; emphasis in original.) Id.

basis for an award of attorney fees under OCGA § 9-15-14 must be vacated and the case must be remanded for reconsideration." (Citations, punctuation and footnote omitted.) *Dan J. Sheehan Co.*, supra at 792 (3). On remand, we direct the trial court to reconsider its May 1, 2009 order, make appropriate findings of fact, and enter a new judgment from which appeal by either party is authorized.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. Mikell, P. J., and Dillard, J., concur.*

DECIDED MARCH 26, 2012.

*Richard J. Tuneski*, for appellant.
*Harris & Bunch, Frank P. Harris*, for appellees.