Filed 4/12/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KEITH KARPINSKI,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SMITTY'S BAR, INC.,<br><br>    Defendant and Appellant. | A143381<br><br>(Marin County<br>Super. Ct. No. CIV-1205504) |

Appellant Smitty's Bar, Inc. (Smitty's) appeals after the trial court granted the motion of respondent Keith Karpinski to enforce a settlement between the parties, pursuant to Code of Civil Procedure section 664.6.[1] On appeal, Smitty's contends the trial court erred when it granted the motion because satisfaction of two outstanding statutory medical liens—involving the California Victims of Crime program and Medicare,[2]—is a condition precedent to payment of the settlement proceeds, and Karpinski has failed to satisfy the liens. We shall affirm the judgment.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the first full paragraph commencing at the top of page 9 beginning with "First, with respect to …" and ending at the top of page 10 with "… precedent to its payment to Karpinski," including footnotes 7 and 8 therein.

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Although it is not clear whether Medicare's right to reimbursement is technically a lien, it is commonly referred to as such. (See, e.g., *Haro v. Sebelius* (9th Cir. 2013) 747 F.3d 1099, 1117 [declining to address whether Medicare's secondary payer provisions create a lien against settlement proceeds]; *Zinman v. Shalala* (N.D.Cal. 1993) 835 F.Supp. 1163, 1171 [court concluded Medicare did not have a lien interest in settlement

## FACTUAL AND PROCEDURAL BACKGROUND

On December 11, 2012, Karpinski filed a complaint for damages against Smitty's, Kyle Phillip Algeo, and Scott Newcomb, with a cause of action against Smitty's for negligence and a cause of action against the two other defendants for assault and battery. The complaint alleged that, on July 2, 2012, Smitty's, a bar in Sausalito, negligently allowed two intoxicated individuals, Algeo and Newcomb, to enter and remain in the bar, and that the two men threatened and punched Karpinski in the face and head, causing serious injuries.[3]

On March 20, 2014, following court-ordered mediation, Smitty's and Karpinski signed an initial settlement agreement in which Karpinski agreed to dismiss the complaint as to Smitty's with prejudice in exchange for $40,000. On May 5, 2014, Karpinski and his attorney signed a formal "Settlement Agreement and Release of All Claims" (settlement agreement), in which, in exchange for the $40,000 payment, Karpinski provided a general release of all claims against Smitty's.

On July 22, 2014, Karpinski filed a motion for entry of judgment pursuant to the settlement agreement, under section 664.6. Smitty's opposed the motion on the ground that liens had been imposed against the settlement amount by the federal government, based on Medicare payments to Karpinski, and by the State of California, based on crime victim compensation payments to Karpinski. Smitty's stated that it was willing to pay the settlement amount immediately if Karpinski would accept a check made out to him *and* both of the lien holders. It argued that it required specific written instructions from Medicare and the California Victims of Crime program before it would issue separate checks to Karpinski and each lien holder.

---

proceeds where there was no legislative history indicating government intended to create a lien].)

[3] On October 17, 2014, the trial court entered a default judgment for Karpinski and against Algeo and Newcomb in the total amount of $1,430,968.84.

On September 2, 2014, the trial court granted the motion to enforce the settlement, reasoning as follows: "While the terms of the settlement agreement state that [Karpinski] and his counsel will 'negotiate, satisfy, and dispose of all liens,' it does not state that they must do so before receiving payment. Further, the settlement agreement requires [Karpinski] and his counsel to hold [Smitty's], its attorneys, and [Crusader] Insurance Company harmless with respect to any lien claims. Although Crusader [] expresses concern over whether [Karpinski] and his counsel will honor that obligation if a claim arises, Crusader [] has a remedy if they do not." On September 11, 2014, the court ordered entry of judgment for Karpinski and against Smitty's in the amount of $40,000. The court also awarded Karpinski $2,200 in attorney fees. On September 17, 2014, Karpinski served notice of entry of judgment.[4]

On October 15, 2014, Smitty's filed a notice of appeal.

## DISCUSSION

Smitty's contends the trial court erred when it granted Karpinski's motion to enforce the settlement because satisfaction of the outstanding medical liens is a condition precedent to payment of the settlement and Karpinski has failed to resolve the liens.

### I. *Section 664.6 and the Applicable Standard of Review*

Section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

" 'Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit.' [Citation.] A trial court 'hearing a section 664.6 motion may receive evidence, determine disputed facts,

_____

[4] On September 18, 2014, Smitty's filed a petition for writ of mandate and/or prohibition in this matter. On October 2, 2014, we denied the petition (A143015).

3

and enter the terms of a settlement agreement as a judgment.' [Citation.] The trial court may not 'create the material terms of a settlement, as opposed to deciding what terms the parties themselves have previously agreed upon.' [Citation.] Thus, a trial court cannot enforce a settlement under section 664.6 unless the trial court finds the parties expressly consented, in this case in writing, to the material terms of the settlement. [Citation.]" (*Bowers v. Raymond J. Lucia Companies, Inc*. (2012) 206 Cal.App.4th 724, 732, quoting *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809-810.)

"The trial court's factual findings on a motion to enforce a settlement under section 664.6 'are subject to limited appellate review and will not be disturbed if supported by substantial evidence.' [Citation.] In instances involving questions of law, including the construction and application of the statute, the trial court's decision is not entitled to deference and will be subject to independent review. [Citation.]" (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253.) In addition, the objective intent of contracting parties is ordinarily "a legal question determined solely by reference to the contract's terms. (Civ. Code, § 1639 ['[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . .']; Civ. Code, § 1638 [the 'language of a contract is to govern its interpretation . . .'].)" (*Wolf v. Walt Disney Pictures &Television* (2008) 162 Cal.App.4th 1107, 1126.) Here, the question raised on appeal involves interpretation of the terms of the settlement agreement and certain statutes, and is therefore subject to de novo review. (See *ibid*.)

## II. *Pertinent Provisions of the Settlement Agreement*

In addition to providing for payment of $40,000 to Karpinski in exchange for a release of all claims, the settlement agreement contained the following relevant provisions. In paragraph No. 5, Karpinski and his attorney "agree[d] to negotiate, satisfy, and dispose of all liens, including but not limited to all client claims which are now known, including but not limited to the lien asserted by State of California, as well as any other lien claims which may hereafter be asserted. [Karpinski] further agrees, as consideration for the above payment, to indemnify and hold harmless [Smitty's], its attorneys and its insurance carrier, Crusader [], with respect to all past, present, and future

4

lien claims." In paragraph No. 6, Karpinski and his attorney also agreed to indemnify Smitty's, its attorneys, and Crusader from any loss, liability, or claim of any kind "arising from or occasioned by any lien, rights or obligations [of] any character whatsoever, including but not limited to, those created by" federal or state statutes, including liens arising under Medicare. In paragraph No. 7, Karpinski "declare[d] that there are no liens, claims or demands of any kind either by any person providing services [to him] or by any attorney either past or present who may have represented [him] in the above-entitled action," and agreed "to indemnify and forever hold harmless the parties herein being released, and their attorneys, and [Crusader], from any claims by any past or present individuals, entities . . . or other persons who may have or may in the future make a claim or place a lien or demand upon the proceeds of the settlement herein." Finally, paragraph 17 of the settlement agreement provided: "In the event Medicare or any entity acting on behalf of Medicare presents a claim for reimbursement to Crusader . . . , [Karpinski and his attorneys] agree to indemnify and defend Crusader . . . in any such claim."

### III.  *The Two Statutes at Issue*

According to Smitty's, the question in this case is "whether a court can enter judgment on a settlement agreement, thus making it immediately enforceable, if there are outstanding liens (or their functional equivalent) that have attached to the proceeds of the settlement which the plaintiff has not yet resolved." Smitty's acknowledges that a defendant has no obligation to protect a plaintiff's contractual liens, but argues that "it is equally clear that it must protect statutory liens, especially where a statute expressly makes it liable." (Bolded language, underscoring & fns. omitted.)

The first statute at issue, Government Code section 13963, is part of the statutory scheme of the California Victims of Crime program, which is intended to "operate[] as a kind of safety net for victims of crime who suffer losses for which there is no other public or private source of compensation." (*County of Alameda v. State Bd. of Control* (1993) 14 Cal.App.4th 1096, 1107.) Government Code section 13963 provides in relevant part: "(a) The [California Victims of Crime Board] shall be subrogated to the rights of the recipient to the extent of any compensation granted by the board. The subrogation rights

5

shall be against . . . any person liable for the losses suffered . . . . [¶] (b) The board shall also be entitled to a lien on any judgment, award, or settlement in favor of or on behalf of the recipient for losses suffered as a direct result of the crime that was the basis for the receipt of compensation in the amount of the compensation granted by the board. The board may recover this amount in a separate action, or may intervene in an action brought by or on behalf of the recipient. . . . [¶] . . . [¶] (d) No judgment, award, or settlement in any action or claim by a recipient, where the board has an interest, shall be satisfied without first giving the board notice and a reasonable opportunity to perfect and satisfy the lien. . . ." Subdivision (g) of Government Code section 13963 requires the trial court, "on the application of the board," to "allow as a lien against the amount of the judgment or award, the amount of the compensation granted by the board to the recipient for losses sustained as a result of the same incident upon which the settlement, award, or judgment is based."

The second statute at issue is the Medicare Secondary Payer Act (MSP Act), under which Medicare may conditionally pay an injured person's medical bills, subject to reimbursement of those payments by either a "primary plan" or the recipient of the Medicare funds. (42 U.S.C. § 1395y(b)(2)(B)(i) & (ii).) A "primary plan" is defined to include a "liability insurance policy or plan." (42 U.S.C. § 1395y(b)(2)(A)(ii).) Thus, the MSP Act "plainly includes tortfeasors and their insurance carriers in its definition of 'primary plan[.]' " (*Taransky v. Secretary of U.S. Dept. of Health and Human Services* (2014) 760 F.3d 307, 314.)

Medicare also has a right of action to recover its payments from, inter alia, a beneficiary or attorney "that has received a primary payment." (42 C.F.R. § 411.24(g).)[5] "If the beneficiary or other party receives a primary payment, the beneficiary or other

---

[5] "Primary payment means, when used in the context in which Medicare is the secondary payer, payment by a primary payer for services that are also covered under Medicare," and "primary payer" means "any entity," including an insurer, "that is or was required or responsible to make payment . . . under a primary plan." (42 C.F.R. § 411.21.)

party must reimburse Medicare within 60 days." (42 C.F.R. § 411.24(h).) "In the case of [inter alia,] liability insurance settlements . . . , the following rule applies: If Medicare is not reimbursed [within 60 days], the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party." (42 C.F.R. § 411.24(i)(1).) "If it is necessary for [Medicare] to take legal action to recover from the primary payer, [Medicare] may recover twice the amount" of the Medicare primary payment. (42 C.F.R. § 411.24 (c)(2); see also 42 U.S.C. § 1395y(b)(2)(B)(iii).)

## IV. *Legal Analysis*

The parties agree that Medicare is entitled to reimbursement of its conditional payments and that the lien of the board must be paid. Smitty's asserts, however, that Karpinski's motion to enforce the settlement was an improper attempt to use section 664.6 to evade his obligation to resolve the liens before payment of the settlement amount. In particular, Smitty's asserts that reimbursement to Medicare and the board are conditions precedent to payment of the settlement proceeds to Karpinski.

First, we observe that Smitty's did not raise the legal theory of conditions precedent in the trial court. (See *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 ["As a general rule, 'issues not raised in the trial court cannot be raised for the first time on appeal' "]; accord, *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)

In any event, there is nothing in the settlement agreement demonstrating the existence of a condition precedent to payment of the $40,000 to Karpinski. " 'In contract law, "a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." [Citation.] The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract.

[Citation.]' [Citation.]" (*Pfeiffer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1267.)[6]

Here, the settlement agreement provides that Karpinski will satisfy all liens and indemnify Smitty's, its attorneys, and Crusader with respect to any claim arising under a lien or other obligation. There is no provision that either expressly states or implies that Karpinski must satisfy the liens *before* it receives the settlement proceeds. Smitty's points to paragraph 7, which states that Karpinski "covenants and declares that there are no liens, claims or demands of any kind either by any person providing services to [Karpinski] or by any attorney either past or present who may have represented [Karpinski] in the above-entitled action." That provision does not demonstrate that resolution of all liens is either an express or implied condition precedent to Smitty's settlement payment to Karpinski. Notably, paragraph No. 7 appears to be a general boilerplate provision regarding liens, whereas paragraph Nos. 5, 6, and 17 all relate to the particular facts and reimbursement obligations of the present case. (See § 1859 [in a contract, "when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it"]; accord, *Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1235.) Hence, Smitty's has not shown that Karpinski's satisfaction of the liens is an express or implied condition precedent to payment of the settlement proceeds. (See *Pfeiffer v. Countrywide Home Loans, Inc.*, *supra*, 211 Cal.App.4th at p. 1267.)

In addition, neither the lien imposed under Government Code section 13963 nor the reimbursement obligation under title 42 of the United States Code section

---

[6] Karpinski argues that Smitty's attempt to introduce extrinsic evidence to demonstrate a condition precedent is barred by the parol evidence rule. As Smitty's points out, however, the parol evidence rule does not apply to conditions precedent. (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 393, fn. 13 ["a condition precedent prevents the contract from coming into existence, hence it cannot be barred by the parol evidence rule which rests upon the contract"].)

1395y(b)(2)(B) constitutes a statutory condition precedent to payment of the settlement proceeds in the circumstances of this case.

First, with respect to Government Code section 13963, [7] Karpinski apparently complied with the provisions requiring that the recipient of compensation from the board or the recipient's attorney give notice to the board of any action filed, so that it has the opportunity to perfect and satisfy its lien. (Gov. Code, § 13963, subds. (d) & (e)(1).) Subdivision (g) of Government Code section 13963 provides that the court, after payment of litigation expenses and attorney fees and, "on the application of the board," shall "allow as a lien against the amount of the judgment or award, the amount of compensation granted by the board." This provision, which requires *the court*, only *on application of the board*, to allow as a lien against the judgment the amount owed to the board, does not support Smitty's claim that it would violate section 13963 if it paid the full settlement proceeds to Karpinski without first ensuring that the board was reimbursed. There is no evidence in the record reflecting such application by the board or showing that the court made any order pursuant to subdivision (g) of Government Code section 13963. Nor is there any evidence that the board has attempted to either "recover this amount in a separate action," or "intervene in [this] action," pursuant to Government Code section 13963, subdivision (b) in order "to perfect and satisfy the lien." (Gov. Code, § 13963, subd. (d).)

Instead, the only evidence on this question shows that the board, which apparently had notice of the present action, made a payoff demand to Karpinski's attorney, at his request, shortly after the initial settlement agreement was signed, and that the court subsequently ordered Smitty's to pay the full settlement amount to Karpinski. Thus,

---

[7] At oral argument, counsel for both parties advised us that the board's lien has been repaid by one or both of the other defendants in this case, as a condition of probation in the criminal case resulting from the assault of Karpinski. In any event, as discussed in the text, *post*, even were the lien still unpaid, we would reject Smitty's argument that its satisfaction is a condition precedent to payment of the settlement proceeds in the circumstances of this case.

9

pursuant to the terms of the settlement agreement, the board's payoff demand, and the court's order, it is Karpinski's obligation—not Smitty's—to satisfy the obligation from the settlement proceeds.[8]  Accordingly, Smitty's cannot claim that payment of the board's lien is a statutory condition precedent to its payment to Karpinski.

As to Medicare's right to reimbursement of its conditional payments to Karpinski, Smitty's is correct that the relevant statute and regulation provide for reimbursement from the beneficiary, with a right to seek payment from a primary payer should the beneficiary fail to reimburse Medicare.  (See 42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. 411.24(h) & (i).)  The parties have cited no California cases, and we have found none, addressing the issue of whether there is an obligation to reimburse Medicare for its conditional payments before a plaintiff may receive the proceeds from a settlement agreement, even though the agreement does not provide for the prepayment of such obligations.  However, we find persuasive the reasoning of the Georgia Court of Appeals, which in a similar case concluded that public policy does not preclude a court from enforcing a settlement that does not include Medicare as a co-payee on a settlement check where the plaintiff signed a release acknowledging his responsibility to pay any Medicare claim and/or agreeing to indemnify the released parties.  (*Hearn v. Dollar Rent A Car, Inc.* (Ga.Ct.App. 2012) 726 S.E.2d 661, 668 (*Hearn*).)[9]

---

[8] Smitty's asserts that it could be found liable for conversion if it pays the full settlement amount to Karpinski before the board's lien is satisfied.  Smitty's cites *Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 45-46 and footnote 5, in support of this proposition.  In that case, the appellate court found that "attorneys may maintain conversion actions against those who wrongfully withhold or disburse funds subject to their attorney's liens."  (*Id.* at p. 45.)  The court also emphasized that, since attorneys' liens are different from other liens, cases not involving attorneys' liens were inapt.  (*Id.* at p. 46, fn. 5.)  In this case, which of course does not involve an attorney's lien, Smitty's concern is misplaced, given that the payment of the settlement proceeds will not be "wrongful," but will be pursuant to a court order.

[9] The appellate court in *Hearn* "express[ed] no opinion as to whether public policy would be violated in the absence of an express acknowledgement of liability and/or an indemnity agreement."  (*Hearn*, *supra*, 726 S.E.2d at p. 668.)

10

The *Hearn* court agreed with the reasoning of a Connecticut court, which had observed that " 'there is no authority for an insurer's insistence that it protect a governmental agency's lien by making that agency a co-payee on a check tendered in payment of a judgment or settlement. To the contrary, the recent case of *Zaleppa v. Seiwell* [(Pa.Super.Ct. 2010) 9 A.3d 632], stands for the proposition that, absent express authorization, private parties may not assert the interests of the government (in that case, Medicare) in a post-trial motion or any phase of litigation. Generally, putting an agency's name on a check as co-payee is neither authorized nor required under federal or state law, and quite obviously, is not an efficient way to resolve personal injury lawsuits. . . . [¶] While an insurer has a responsibility to assure that governmental agency liens are taken into account, such responsibility is generally discharged by obtaining a written commitment by the plaintiff, either in a release document or in an independent document, to be responsible for all such liens. . . .' (*McBride v. Brown* 2011 [WL 1566002].)" (*Hearn*, *supra*, 726 S.E.2d at p. 668.)[10]

_____

[10] Like the court in *Hearn*, we reject Smitty's argument that the reasoning of the Florida Court of Appeals in *Pollo Operations, Inc. v. Tripp* (Fla.Ct.App. 2005) 906 So.2d 1101 (*Pollo*) is applicable here. (See *Hearn*, *supra*, 726 S.E.2d at p. 668, fn. 6.) In *Pollo*, the plaintiff's attorney devised a plan whereby the defendant insured, rather than the insurer, wrote a settlement check directly to the plaintiff, believing that this would preclude Medicare from obtaining reimbursement, and the trial court ordered the direct payment. (*Pollo*, at pp. 1102-1103.) On appeal, the appellate court found that "the decision of the lower court places [the insurer] in a catch-22 and exposes the company to additional liability," and stated that it was "loath to permit the courts of this state to become blessing machines for such conduct." (*Id*. at pp. 1105-1106.) The court noted that this was one of the reasons most settling counsel involve Medicare in the settlement of these claims. (*Id*. at p. 1106.) Here, as in *Hearn*, there was no evidence of such a scheme to make an end run around Medicare. (See *Hearn*, at p. 668, fn. 6.) Moreover, as in *Hearn*, the settlement agreement did not contemplate reimbursement to Medicare before payment of the settlement proceeds to Karpinski. Rather, Karpinski agreed to be responsible for reimbursement of Medicare and to indemnify Smitty's, its attorneys, and Crusader. (*See ibid*.)

The *Hearn* court also distinguished cases such as *Wilson v. State Farm, Mutual Auto. Ins. Co.* (W.D.Ky. 2011) 795 F.Supp.2d 604—also relied on by Smitty's—in which, "[i]n the limited context of bad faith failure-to-pay claims against insurance

In this case, as with the agreement in *Hearn*, the parties referred to Medicare's right of reimbursement in the settlement agreement, and Karpinski signed a release acknowledging, in paragraph No. 5, his responsibility to honor all lien obligations. (See *Hearn*, *supra*, 726 S.E.2d at p. 668.) Moreover, if Karpinski fails to honor his obligation to repay Medicare, paragraph No. 5 of the agreement requires him to indemnify Smitty's, its attorneys, and Crusader "with respect to all past, present, and future lien claims" and paragraph No. 17 specifically requires him to indemnify Crusader in any claim related to Medicare reimbursement. (See *ibid.*) Had Smitty's and Crusader wanted to ensure that Medicare was reimbursed for its conditional payment to Karpinski before payment of the settlement proceeds, they could have negotiated for inclusion of such a provision in the settlement agreement.

Smitty's nonetheless argues that the provisions in the settlement agreement regarding repayment of liens do not guarantee that Karpinski will honor his obligations to reimburse both the board and Medicare. That there are no guarantees does not alter the fact that Smitty's agreed to pay Karpinski $40,000 in exchange for his release and promises to satisfy all liens and indemnify Smitty's and Crusader against any claims. Again, if Smitty's and Crusader were so concerned about their potential liability either to Medicare or to the board, they could have negotiated for inclusion of terms in the settlement agreement requiring either Karpinski's payment of these obligations as a precondition to receipt of the settlement proceeds or inclusion of the board and Medicare as payees on the settlement check. Smitty's and its insurer did neither of these things, and must therefore comply with the terms of the agreement as written: timely payment of the full agreed-upon settlement amount to Karpinski. Thereafter, as the trial court stated,

---

companies, some courts have determined that, in the absence of an explicit agreement, it is reasonable for an insurer to list Medicare as a payee on a settlement check." (*Hearn*, *supra*, 726 S.E.2d at p. 668 [citing cases].)

if Karpinski fails to honor the relevant provisions of the agreement, Smitty's and Crusader have a remedy.[11]

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondent Keith Karpinski.

---

[11] Indeed, there are no less than five different indemnity provisions in the 17-paragraph settlement agreement.

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Stewart, J.


*Karpinski v. Smitty's Bar, Inc.* (A143381)

14

Trial Court:                                    Marin County Superior Court

Trial Judge:                                    Hon. Mark A. Talamantes

Attorneys for Defendant and Appellant:

                                                Law Offices of Mark R. Mittelman
                                                Mark R. Mittelman
                                                Paul A. Kanter


Attorney for Plaintiff and Respondent:

                                                Law Offices of Thomas J. LaLanne
                                                Thomas J. LaLanne