A99A2387. PYLE v. PYLE et al.
(531 SE2d 738)

PHIPPS, Judge.

Danny Pyle was buried in a cemetery owned and operated by the City of Cedartown. When his widow discovered that the city had granted title to his grave and the adjacent grave space to his son by a previous marriage, she sued the city, Lester Litesey Funeral Home, Inc., and the son. In this appeal, she contests the trial court's grant of summary judgment to the funeral home on her claims of breach of contract and interference with burial rights. She also contests the grant of summary judgment to the funeral home and the son on her claims of conspiracy and fraud.

When Danny Pyle died on April 21, 1997, he was survived by his second wife, Caron Pyle, and children of his first marriage, including a son, Michael Pyle. The widow, the son, and other family members met with Lester Litesey III, vice-president of the funeral home, and entered into an agreement for funeral goods and services for the burial. Because Michael Pyle and Litesey were good friends, Litesey discounted the bill by $2,795.

Caron Pyle and Michael Pyle later met with the city's cemetery superintendent and selected a burial plot with two adjacent grave spaces — one in which to bury Danny Pyle, and one in which Caron Pyle expected to be buried. She told the cemetery superintendent to title the plot in her name.

The city required payment for grave spaces before permitting burials. When Michael Pyle discovered that his father's "funds were tied up," he asked Litesey to add the cost of the burial plot to the funeral bill. Litesey deposed that he agreed to pay the city and that "somebody [would] bring [him] a check for the [burial plot] when they got the money."

Based on information that the cemetery superintendent returned to her after meeting with the Pyle family, the city's tax clerk prepared a "City of Cedartown Cemetery Lot and Grave Application." The application showed that two grave spaces were being purchased, that the cost totaled $710, and that the deed was to grant title to Caron Pyle. Because the funeral home was paying for the grave, the grave application showed the funeral home as the applicant, and an authorized funeral home agent signed the grave application which provided, "I hereby agree to pay in advance for said cemetery lots and/or opening of grave." On April 23, Danny Pyle was buried in one of the two selected grave spaces.

The funeral home delivered its check to the city for $710 on April 25, and after receiving a check from Michael Pyle some days later, Litesey delivered that check to the city and received a refund of the funeral home's payment. Litesey also gave the city a note which

stated, "Make deed to Michael Pyle, 41 Beaver Run, Cedartown, Georgia 30125." The tax clerk testified that she then changed the grave application to show that Michael Pyle was to receive the deed. Some time thereafter, she prepared a deed which granted title to the plot to him.

Caron Pyle discovered that Michael Pyle had title to the plot when she attempted to memorialize her husband's grave with a double headstone inscribed with their names. Michael Pyle refused to permit it. When that happened, she sued.

The trial court granted summary judgment to the city on fraud and intentional infliction of emotional distress claims, and we affirmed that decision.[1] The controversy is before us again on grants of summary judgment on Caron Pyle's claims against the funeral home and Michael Pyle.

On appeal of a grant of summary judgment, we determine whether the trial court erred in concluding that the moving party demonstrated that no genuine issue of material fact remained and was entitled to judgment as a matter of law.[2] A defendant may do this by showing the court that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.[3] We view the evidence, and all reasonable conclusions and inferences drawn from it, de novo and in the light most favorable to the nonmovant.[4]

1. Caron Pyle contends that the trial court erred by granting summary judgment to the funeral home on her contract claim, maintaining that the funeral home breached the contract for funeral goods and services by causing the city to title the plot in Michael Pyle's name. The funeral home argues that the contract did not include the purchase of the burial plot.

Although the contract charged $350 for "cemetery fees," Litesey deposed that $300 was for opening and closing the grave and $50 was for the city's grave application fee. He pointed to a section of blank lines in the contract and asserted that the section would have been completed had the contract included the purchase of a burial plot. Litesey's statement that he did not discuss the purchase of grave spaces with the Pyle family when they entered into the contract is undisputed.

When viewed in the light most favorable to Caron Pyle as nonmovant, there was insufficient evidence from which a jury could find

---

[1] See *Pyle v. City of Cedartown*, 240 Ga. App. 445 (524 SE2d 7) (1999).
[2] OCGA § 9-11-56 (c).
[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[4] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

that the contract included securing a burial plot in her name. Even assuming that Litesey's subsequent agreement with Michael Pyle that the funeral home would advance payment to the city for the plot amended the initial contract, the record remains devoid of evidence that the amendment further specified that title to the plot was to be in Caron Pyle's name. Therefore, the trial court did not err by granting summary judgment to the funeral home on the breach of contract claim.

2. Caron Pyle contends that the trial court erred in granting summary judgment to the funeral home on her claim of interference with burial rights. She asserts that the funeral home, at Michael Pyle's request, instructed the city to grant title to the burial plot to him, which has caused her to be prohibited from memorializing her husband's grave and has interfered with her purchase of the adjacent grave site for her own burial.

Caron Pyle, as the surviving spouse, had the private right to bury her husband.[5] Her private right to bury her husband included determining the time, manner, and place of burial.[6] The funeral home owed her the duty not to wilfully or wantonly interfere with the burial of her husband.[7] To show wilful or wanton conduct, one must demonstrate that a defendant's acts evidenced "a wilful intention to inflict the injury, or else were so . . . charged with indifference to the consequences as to justify finding a wantonness equivalent in spirit to actual intent."[8] While prior cases addressing tortious interference with burial rights have generally considered conduct prior to or during the burial,[9] the fact that the conduct occurred after interment does not, as a matter of law, insulate the funeral home from tort liability.

In his deposition, Michael Pyle stated that he hated Caron Pyle and did not want her to be buried beside his father. He deposed that he and Litesey discussed that if he purchased the plot, he could control it. He testified that he now owns the plot, that he has prohibited Caron Pyle from placing a monument on his father's grave, and that he would object to moving his father from that grave to another of her selection.

---

[5] *Habersham Mem. Park v. Moore*, 164 Ga. App. 676, 678 (1) (297 SE2d 315) (1982).

[6] Id. at 680 (2).

[7] *McNeal Loftis, Inc. v. Helmey*, 218 Ga. App. 628, 629 (462 SE2d 789) (1995).

[8] (Citation and punctuation omitted.) Id.

[9] See *Habersham*, supra, 164 Ga. App. at 677-679 (1) (defendant disrupted funeral by arguing with members of the funeral party including minister as he was conducting the service); *Stephens v. Watts*, 53 Ga. App. 44 (184 SE 781) (1936) (physical precedent only) (defendant physically threatened those preparing grave and later delayed burial by blocking access to grave); *Wright v. Hollywood Cemetery Corp.*, 112 Ga. 884, 890-892 (4) (38 SE 94) (1901) (defendant cemetery owner refused funeral procession bearing body access to family plot after grave had been prepared).

Litesey admitted that when he gave the city the note stating that the deed for the plot should grant title to Michael Pyle, he knew of the animosity between Caron Pyle and Michael Pyle. He deposed that he understood at that time that the "right of disposition in the funeral industry, as far as the funeral service, goes . . . to the spouse and then children." Yet, he never talked to Caron Pyle about the deed for the plot because, in that regard, he testified that he was acting on behalf of Michael Pyle.

The evidence was sufficient to support a jury finding that the funeral home's actions unlawfully interfered with the exercise of Caron Pyle's private right to bury her husband. It was error to grant the funeral home summary judgment on this claim.

3. Caron Pyle contends that the trial court erred in granting summary judgment to the funeral home and Michael Pyle on the issues of conspiracy and fraud because they conspired to fraudulently induce the city to title the plot to Michael Pyle. Michael Pyle argues that conspiracy constitutes no cause of action.

> Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.[10]

Caron Pyle maintains that she was defrauded because the funeral home and Michael Pyle falsely represented to the cemetery superintendent that the plot should be titled to Michael Pyle and thereby induced the superintendent to convey the plot to him. But "actionable fraud must be based upon a misrepresentation made to the defrauded party, and relied upon by the defrauded party."[11] Because there is no evidence in the record that the funeral home and Michael Pyle told Caron Pyle that the deed should be titled to Michael Pyle and that she relied on that misrepresentation to her detriment, this contention is without merit. The trial court did not err in granting summary judgment on the conspiracy and fraud claims.

*Judgment affirmed in part and reversed in part. Johnson, C. J., and McMurray, P. J., concur.*

---

[10] (Punctuation omitted.) *Cook v. Robinson*, 216 Ga. 328-329 (1) (116 SE2d 742) (1960).
[11] (Emphasis omitted.) *Fla. Rock & Tank Lines v. Moore*, 258 Ga. 106 (365 SE2d 836) (1988).

DECIDED MARCH 16, 2000 —
RECONSIDERATION DENIED APRIL 10, 2000 — 

*James A. Satcher, Jr.,* for appellant.
*Seacrest, Karesh, Tate & Bicknese, Gary L. Seacrest, Jeffrey P. Raasch, Richard C. Sutton,* for appellees.