A09A0513, A09A0514. EASTVIEW HEALTHCARE, LLC
v. SYNERTX, INC.; and vice versa.
A09A0515, A09A0516. WESTVIEW NURSING &
REHABILITATION CENTER, LLC v. SYNERTX, INC.;
and vice versa.
A09A0517, A09A0518. PEACHBELT HEALTH &
REHABILITATION CENTER, LLC v. SYNERTX, INC.;
and vice versa.
A09A0519, A09A0520. ELBERTA HEALTHCARE, LLC
v. SYNERTX, INC.; and vice versa.

(674 SE2d 641)

ELLINGTON, Judge.

Synertx, Inc., an Arizona corporation which provides physical, occupational and speech therapists to healthcare facilities, sued four skilled care nursing homes, Eastview Healthcare, LLC, Westview Nursing & Rehabilitation Center, LLC, Peachbelt Health & Rehabilitation Center, LLC, and Elberta Healthcare, LLC ("the facilities"), for breach of contract and to collect on an open account. The facilities filed counterclaims against Synertx, claiming that the company breached the contracts by failing to provide enough qualified therapists to carry out the terms of the contracts. They contended that, as a result, they were unable to provide all of the prescribed rehabilitation services to their residents and were unable to accept referrals of additional patients who needed therapy, resulting in lost profits. Synertx filed a motion for summary judgment on its claims and on the facilities' counterclaims. The facilities responded to the motion, asserting certain facts to support their defenses and claims and relying on an affidavit and other documents attached to their responses. Synertx filed a motion to strike certain assertions in the facilities' responses and the attached affidavit and objecting to the admissibility of the documents attached to those responses. The facilities then filed motions to strike the contracts at issue in the claims and counterclaims, claiming that they lacked proper authentication and constituted inadmissible hearsay. After conducting a hearing,[1] the trial court granted summary judgment to Synertx on its claims against the facilities and granted Synertx's motions to strike. The court denied Synertx's motion for summary judgment on the facilities' counterclaims, and also denied the facilities' motions to strike.

In Case Nos. A09A0513, A09A0515, A09A0517 and A09A0519, the facilities appeal from the court's grant of summary judgment to Synertx on the company's claims, its grant of Synertx's motions to

---

[1] The hearing was not transcribed.

394

strike, and its denial of their motions to strike. For reasons more fully explained below, we affirm the court's judgments in these cases.

In Case Nos. A09A0514, A09A0516, A09A0518 and A09A0520, Synertx appeals from the court's denial of its motions for summary judgment on the facilities' counterclaims. Because there was evidence to create a jury issue regarding whether Synertx breached its contracts with the facilities, we affirm the court's denial of Synertx's motions for summary judgment on the counterclaims.

### *Case Nos. A09A0513, A09A0515, A09A0517 and A09A0519*

1. The facilities claim that the court erred in granting summary judgment to Synertx on the company's claims against the facilities for amounts due under the contract. They argue that Synertx materially breached the contract by failing to provide adequate therapy staffing. Therefore, according to the facilities, they are relieved of any further duty under the contract, and Synertx is estopped from filing suit to collect funds due under the agreement. The facilities also argue that, because of this breach, they should not have to pay interest or late fees on their balances due.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004). So viewed, the record shows the following undisputed facts.

The contracts between Synertx and the facilities provided that Synertx's therapists would provide therapy services to the facilities' "patients/residents on an as-needed basis or as otherwise requested by [the facilities]." In exchange, the facilities agreed to pay Synertx's monthly invoices, which were to contain sufficient information as to the services provided so that the facilities could bill third parties, as necessary. Further, each of the contracts stated that,

> [if the] facility has any question or issue regarding any invoice from [Synertx, the] facility shall so notify [Synertx] in writing within fourteen (14) days of receiving the invoice, or such invoice shall be deemed accurate and complete in all regards. [The] facility shall pay [Synertx's] invoices within thirty (30) days of the end of each month. of service. Payment not made when due shall be subject to a late-payment service fee of 2% (or the highest amount permitted by law, if less) of facility's outstanding balance, accrued for each whole and/or partial 30-day period past due.

In addition, the contracts provided that either party could terminate the contract at any time, with or without cause, by giving at least 30 days written notice. The facilities agreed that, within 60 days of termination, they would pay Synertx "for any and all services provided up to and through the date of such termination."

Rodney Hatch, the president and CEO of Synertx, averred by affidavit that Synertx sent each of the facilities monthly invoices for services provided between 2002 and 2004, as well as statements for outstanding balances. The invoices and statements were attached to Hatch's affidavit. According to the affidavit, Synertx provided all of the services listed on the invoices and never received any written notice or objection from the facilities to any of the invoices or statements. The record shows that the facilities failed to pay the full balance due on the invoices or made late payments on some of the invoices, and Synertx charged finance charges based upon the invoices and regularly notified the facilities of the outstanding accrued finance charges. In addition, in her deposition, the facilities' majority owner, Deborah Meade,[2] admitted that Synertx sent monthly invoices for services that it had provided and that the facilities had not disputed the amount of the invoices or questioned Synertx about whether its therapists had actually provided the services.

In March 2006, Synertx sent letters to each of the facilities demanding payment of outstanding balances on invoices for services provided in 2002 through 2004, plus interest and attorney fees.[3] When the facilities failed to pay, Synertx filed the instant suits.

(a) The facilities argue that Synertx should be estopped from enforcing the contract because Synertx is the party that materially breached the agreement by failing to provide a sufficient number of therapists to meet the facilities' alleged needs. See OCGA § 13-4-22 ("Where the conditions as to performance of a contract are concurrent, if one party offers to perform and the other refuses to perform, the first shall be discharged from the performance of his part of the contract and may maintain an action against the other."); *Forest Commodity Corp. v. Lone Star Indus.*, 255 Ga. App. 244, 247-248 (2) (564 SE2d 755) (2002) (a party's refusal to abide by a contract provision or any other relinquishing of contractual obligations is properly considered a repudiation of the contract amounting to an

---

[2] Meade, who is not a party to this action, owns 98 percent of the four facilities; each of her two minor children owns one percent of the facilities.

[3] According to the letters, the facilities owed the following amounts of principal plus interest to Synertx: Eastview Healthcare owed $21,167; Westview Nursing & Rehabilitation Center owed $36,117.21; Peachbelt Health & Rehabilitation Center owed $1,197.15; and Elberta Healthcare owed $13,968.79.

anticipatory breach and estops the breaching party from seeking to enforce other parts of the agreement). The facilities' argument lacks merit in this case.

There is no evidence to support a finding that Synertx repudiated the contracts by refusing to provide any future services under the contracts at any time before the facilities terminated the contracts. Even if Synertx had stopped providing services and thereby discharged the facilities from their future obligations under the contract, however, that would not relieve the facilities from their obligation to pay for the services that Synertx already had rendered pursuant to the terms of the contracts and that the facilities had received and accepted. See *Lipton v. Warner, Mayoue & Bates*, 228 Ga. App. 516, 517-518 (1) (492 SE2d 281) (1997) (after a law firm presented evidence of the unpaid amount for services the defendant had already received and accepted, the burden shifted to the defendant to point to specific evidence giving rise to a triable issue showing the debt was inaccurate, inflated or the result of fraud; when the defendant did not meet that burden, the law firm was entitled to summary judgment on its claim for the amount due); see also, generally, *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 28 (c) (485 SE2d 563) (1997) (physical precedent only) ("[If a] contract is void, is repudiated, or can only be implied, then quantum meruit will allow a recovery if the work or service was accepted and if it had value to the recipient.") (citations omitted).

(b) For the same reasons, the facilities' argument that they should not be required to pay late fees and finance charges for services provided pursuant to the express terms of the contract because Synertx subsequently breached the contract must also fail.

Thus, the trial court did not err in granting summary judgment to Synertx on its claims against the facilities for balances due on their accounts.

2. The facilities claim that the court erred in sustaining Synertx's objections to evidence attached to their responses to the company's motions for summary judgment and in striking the evidence and the statements of fact which relied upon such evidence. This Court reviews a trial court's decision on a motion to strike for an abuse of discretion. *Cogland v. Hosp. Auth. of Bainbridge*, 290 Ga. App. 73, 74 (1) (658 SE2d 769) (2008).

(a) The facilities argue that Synertx's objections were not specific enough to justify the court's actions. The records show, however, that Synertx not only stated general objections to the statements and documents, but also specifically identified each statement and document to which it objected, stated a precise objection to each statement and document, and supported the objections with legal authority. Thus, this argument lacks merit.

(b) To the extent that the facilities attempt, on appeal, to raise the same arguments in opposition to the motions to strike that they apparently argued during the motions hearing, we find that, with one exception, the arguments have been abandoned for failure to cite any supporting legal authority. See Court of Appeals Rule 25 (c) (2).

(c) Regarding that exception, the facilities contend that several e-mails attached to Meade's affidavit were admissible without the necessity of proving their authenticity because the e-mails had been produced by the plaintiff in the main action, Synertx. The facilities' reliance on *Willis v. Hill*, 116 Ga. App. 848, 871 (6) (159 SE2d 145) (1967), rev'd on other grounds, *Hill v. Willis*, 224 Ga. 263 (161 SE2d 281) (1968), in support of their argument is misplaced. In *Willis*, the plaintiffs produced documents pursuant to the defendant's notice to produce, and the defendant sought to use the documents as evidence against the plaintiffs. 116 Ga. App. at 871 (6). The Court held that, "[u]pon production of copies pursuant to a notice to produce, the producing party admits the correctness of the copies and further proof is unnecessary in order for the moving party[, i.e., the re-questing party,] to introduce them into evidence." Id.

In these cases, however, the records clearly show that Synertx *did not* produce the e-mails, but that the *facilities* (the defendants in the main action) produced a few of the e-mails during discovery.[4] Thus, because the facilities produced the e-mails and were relying on them to support their counterclaims and defenses, the facilities are deemed to have admitted to the correctness and authenticity of the documents, and Synertx was authorized to introduce the e-mails as evidence against the facilities without providing further proof of authenticity. *Willis v. Hill*, 116 Ga. App. at 871 (6). In contrast, however, because Synertx neither produced the e-mails nor claimed any benefit pursuant to them, the facilities were not authorized to use the e-mails in support of their claims or defenses against Synertx without producing further proof of the e-mails' authenticity. See *Campbell v. Roberts*, 66 Ga. 733, 734-735 (1881) (the administrator of an estate produced a deed during discovery which purported to convey property to the opposing party, but which lacked any proof of delivery to the claimant; under such circumstances, the claimant could not use the deed as evidence against the administrator without further proof of authenticity, since it was the claimant, not the administrator, who sought to benefit under the deed).

---

[4] As to the remaining e-mails, the facilities failed to present any argument or authority on appeal regarding their admissibility. Therefore, any alleged error in excluding these documents is abandoned. Court of Appeals Rule 25 (c) (2).

STATE LAW LIBRARY

Accordingly, the trial court did not abuse its discretion when it sustained Synertx's objections to the admissibility of the e-mails and granted the motion to strike. See *Campbell v. Roberts*, 66 Ga. at 734-735; *Willis v. Hill*, 116 Ga. App. at 871 (6).

3. The facilities contend that the court erred in denying their motions to strike the contract that is at issue in this case, arguing that Synertx failed to prove the existence and terms of the contract. There is no merit to this argument.

In its complaints, Synertx alleged that it had contracted with each of the facilities to provide professional therapy services for the facilities' patients and/or residents upon the terms as set forth in contracts which were attached to the complaints as "Exhibit A." In their answers, each of the facilities admitted the allegation. Hatch also averred by affidavits that the company had contracted with each of the facilities to provide therapy services, and he attached copies of the contracts to his affidavits. Further, during her deposition, Meade identified the contracts and admitted that they were true and accurate copies of the agreements with Synertx that she had signed on behalf of the facilities.

Under these circumstances, the trial court properly denied the facilities' motion to strike the contracts.

### Case Nos. A09A0514, A09A0516, A09A0518 and A09A0520

4. In this cross-appeal, Synertx contends that the trial court erred by failing to grant its motions for summary judgment on the facilities' counterclaims for lost profits. In the counterclaims, the facilities asserted that they lost income due to understaffing by Synertx because some of their patients received less therapy than they might have received if Synertx had provided more therapists. They also contended that they lost income because a physician refused to refer additional patients to them due to concerns about understaffing by Synertx.

The facilities presented some evidence from which a jury could find that Synertx did not provide sufficient therapists to meet the ongoing needs of the facilities and, therefore, it had failed to fully comply with the contract. Synertx argues, however, that the facilities did not present any evidence from which a jury could determine the actual amount of damages which resulted from this alleged breach. But, as shown below, the lack of evidence regarding the actual amount of damages is not dispositive on a motion for summary judgment in a breach of contract case.

Under OCGA § 13-3-1, the plaintiff in a breach of contract action has the burden of pleading and proving the existence of a valid contract by showing that there are "parties able to contract, a

consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." In addition, in order to prevail on his or her claim, the plaintiff must present evidence from which the jury could find that the defendant breached the contract. *Cline v. Lee*, 260 Ga. App. 164, 168 (1) (581 SE2d 558) (2003). Once the plaintiff meets these evidentiary burdens, the defendant is not entitled to summary judgment on the claim, even if the plaintiff fails to present any admissible evidence to establish the amount of actual damages flowing from the breach. *Belcher v. Thomson Newspapers*, 190 Ga. App. 466, 467 (379 SE2d 204) (1989). This is because, under OCGA § 13-6-6, "[in] every case of breach of contract[,] the injured party has a right to damages, but[,] if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." See *Belcher v. Thomson Newspapers*, 190 Ga. App. at 467; *Atkinson v. City of Roswell*, 203 Ga. App. 192, 195 (2) (416 SE2d 550) (1992).

Thus, the lack of evidence of lost income to the facilities resulting from the alleged breach by Synertx does not constitute a viable basis for granting Synertx's motion for summary judgment. *Atkinson v. City of Roswell*, 203 Ga. App. at 195 (2); *Belcher v. Thomson Newspapers*, 190 Ga. App. at 467. There was no error.

*Judgments affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 3, 2009.

*Marshall, Lindley & Powell, Julius A. Powell, Jr.*, for appellants.
*Stone & Baxter, George H. McCallum, Jr.*, for appellee.