**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 14, 2014**

# In the Court of Appeals of Georgia

A14A0949. JUSTICE et al. v. SCI GEORGIA FUNERAL
SERVICES, INC. et al.

McFADDEN, Judge.

This appeal is from a grant of summary judgment to the funeral home defendants in a case arising out their failure to insure that the cremated remains of appellant's decedent were in the urn that was to contain them. Appellant's claims include breach of contract, interference with burial rights, invasion of privacy, intentional infliction of emotional distress and trespass. The grant of summary judgment on the breach of contract claim was premised on the trial court's finding that there were no actual damages arising from the alleged breach. That finding was correct, but because nominal damages may still be recovered, summary judgment on that claim was improper and must be reversed. As to the remaining claims challenged

on appeal, there exist no genuine issues of material fact and we thus affirm the grant of summary judgment on those claims.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We apply a de novo standard of review "to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Moore v. Camara*, 317 Ga. App. 651, 652 (732 SE2d 319) (2012).

So viewed, the evidence shows that Monica Rivera passed away on December 22, 2007. The following day, Rivera's mother, Linda Justice, contracted with SCI Georgia Funeral Services, Inc., d/b/a Striffler-Hamby Mortuary, to provide cremation and memorial services for $4,850. Among other things, the contract provided for transfer of the cremated remains from the crematory to the funeral home, an urn, and a memorial service. The memorial service was held on the morning of December 28, 2007, in the Striffler-Hamby funeral home chapel. In preparing for the service, funeral director Dale Land retrieved the urn with Rivera's name noted on it from an

office in the funeral home, looked inside the urn, saw that it contained a temporary container used to hold the decedent's ashes, and assumed that Rivera's ashes were inside that container. Land placed the urn in the chapel for the service. At the conclusion of the service, Land gave the urn to Justice, who took it to her house and put it on her mantel.

Later that afternoon, Rivera's ashes were delivered by the crematory to the funeral home. Upon learning of the delivery and that the ashes were not in the urn, Land called Justice and asked if he could come speak with her. Justice agreed, and Land then drove to her house. Once there, he explained that the ashes were not in the urn and apologized. He asked for permission to take the urn back to the funeral home so he could put the ashes in it. Justice gave him permission to do so.

After he had returned to the funeral home, Land opened the temporary container in the urn and found that it was indeed empty. He then put Rivera's cremated remains inside it and drove back to Justice's house. He knocked on the screen door, heard voices inside, entered and placed the urn with the ashes back on the mantel in the living room. Justice and a friend then came into the room and spoke briefly with Land. He assured Justice that he had personally placed the decedent's ashes in the urn, apologized again, and left. Thereafter, Striffler-Hamby canceled the

3

amount due under the contract, did not charge Justice for the services provided, and did not collect any money for the services.

Two years later, in November 2009, Justice, her mother Dorothy Wire, and other family members filed the instant lawsuit against Striffler-Hamby and Land. The trial court granted summary judgment to the defendants. This appeal followed.

1. *Breach of contract.*

Justice and the other appellants contend that the trial court erred in granting summary judgment on the breach of contract claim because there exists a genuine issue of material fact as to whether the failure to have the decedent's ashes at the memorial service constituted a breach of the agreement. We agree.

In granting summary judgment, the trial court reasoned that pretermitting any breach, Justice suffered no pecuniary damage because "Striffler-Hamby zeroed out the contract such that there was no charge by the funeral home at all." The trial court was correct in finding that the evidence, including the deposition testimony of both Justice and Wire, unequivocally shows that the funeral home did not charge them or collect payment for the services provided. But the lack of such damages flowing from the presumed breach did not authorize the court's entry of summary judgment.

4

Where there exists evidence from which a jury could find that the defendant breached a contract,

> the defendant is not entitled to summary judgment on the claim, even if the plaintiff fails to present any admissible evidence to establish the amount of actual damages flowing from the breach. This is because, under OCGA § 13-6-6, in every case of breach of contract, the injured party has a right to damages, but, if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action.

*Eastview Healthcare v. Synertx, Inc.*, 296 Ga. App. 393, 399 (4) (674 SE2d 641) (2009).

In this case, there is, at the very least, a genuine issue of material fact as to whether the funeral home's failure to ensure that the decedent's ashes were in the urn during the memorial service constituted a breach of the memorial services contract. So even though there is a lack of evidence that the appellants sustained actual damages arising from the alleged breach, such lack of evidence "does not constitute a viable basis for granting [the defendants'] motion for summary judgment. [Cits.]" Id. See also *Crippen v. Outback Steakhouse Intl.*, 321 Ga. App. 167, 170 (1) (741 SE2d 280) (2013) (citing OCGA § 13-6-6 for proposition that "a lack of damages would not be a bar to a breach of contract claim"); *Hearn v. Dollar Rent a Car*, 315 Ga. App. 164, 174 (1) (e) (726 SE2d 661) (2012) (citing right to recover nominal

damages in breach of contract action as basis for denying summary judgment). The trial court's grant of summary judgment on that basis must therefore be reversed.

2. *Interference with burial rights.*

The appellants contend that the trial court erred in granting summary judgment on their claim of interference with burial rights. The contention is without merit.

"In this state, an unlawful and unwarranted interference with the exercise of the right of burial is a tort. This right of burial belongs to the surviving spouse of the deceased and devolves upon the next of kin of the deceased only if no spouse survives." *Habersham Mem. Park v. Moore*, 164 Ga. App. 676, 678 (1) (297 SE2d 315) (1982) (citations omitted). Assuming that the right of burial belonged to the appellants as next of kin,

> [t]he funeral home owed [them] the duty not to wilfully or wantonly interfere with the burial of [Rivera]. To show wilful or wanton conduct, one must demonstrate that a defendant's acts evidenced a wilful intention to inflict the injury, or else were so charged with indifference to the consequences as to justify finding a wantonness equivalent in spirit to actual intent.

*Pyle v. Pyle*, 243 Ga. App. 398, 400 (2) (531 SE2d 738) (2000) (citations and punctuation omitted).

In this case, there is no evidence that Land or the funeral home acted wilfully or wantonly. Rather, at most, the evidence shows that they acted negligently in failing to ensure that the cremated remains were in the urn during the memorial service. "A demonstration of mere negligence is not sufficient to show wilful or wanton behavior." *McNeal Loftis, Inc. v. Helmey*, 218 Ga. App. 628, 629 (462 SE2d 628) (1995). Because the appellants failed to show the existence of a genuine issue of material fact as to the "element [of wilful or wanton conduct] necessary to recover for tortious interference with burial rights, the trial court [did not err in granting] the motion for summary judgment as to that claim." Id. at 630.

3. *Invasion of privacy.*

The appellants argue that the trial court erroneously granted summary judgment on their invasion of privacy claim. The argument is without merit.

The courts of this state "have identified four kinds of invasion of privacy for which a right of action exists, and among these is an intrusion upon the seclusion or solitude of a plaintiff or into his private affairs. [Cits.]" *Benedict v. State Farm Bank*, 309 Ga. App. 133, 135 (1) (a) (709 SE2d 314) (2011). The appellants allege that the failure to have the decedent's remains present at the memorial service somehow

constituted such an unreasonable intrusion upon their seclusion, solitude and private affairs. However,

> [t]he unreasonable intrusion aspect of the tort of invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns. In order to show the tort of unreasonable intrusion, a plaintiff must show a physical intrusion which is analogous to a trespass; however, this physical requirement can be met by showing that the defendant conducted surveillance on the plaintiff or otherwise monitored plaintiff's activities.

*Sitton v. Print Direction*, 312 Ga. App. 365, 369 (2) (718 SE2d 532) (2011) (citations and punctuation omitted).

In this case, neither the funeral home nor Land pried into or intruded on the appellants' private concerns. And there certainly is no evidence that a physical intrusion or surveillance took place. The fact that the decedent's ashes were not in the urn during the service simply was "not an unreasonable intrusion which would support a claim for invasion of privacy, and [we therefore] affirm[] the trial court's grant of summary judgment on this issue." *Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 706 (1) (409 SE2d 835) (1991).

4. *Intentional infliction of emotional distress.*

8

The trial court correctly granted summary judgment on the claim for intentional infliction of emotional distress.

> The four elements which must be proved in order to sustain a claim of intentional infliction of emotional distress are: (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe.

*Roddy v. Tanner Med. Ctr.*, 262 Ga. App. 202, 204 (585 SE2d 175) (2003).

The appellants cannot prove either of the first two elements. The conduct of the funeral home and Land was not intentional or reckless; rather, as recounted above in Division 2, it was, at most, negligent conduct. Moreover, "[t]o warrant the imposition of liability for such claim, the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hill v. City of Fort Valley*, 251 Ga. App. 615, 616 (1) (a) (554 SE2d 783) (2001) (citation omitted).

But here, as in the similar case of *Hill*, the purportedly negligent conduct did not rise to this level of outrageousness. In *Hill*, the funeral home mistakenly buried the decedent in the wrong plot and then, believing it had permission of surviving family members, re-interred the decedent in the correct plot. This court affirmed the

9

grant of summary judgment to the funeral home on the family's claim of intentional infliction of emotional distress, finding that even if the funeral home was "insensitive or negligent in failing to obtain the express permission of the plaintiffs prior to moving their mother's grave, there is nothing in the record to raise such conduct to the degree of wilfulness or wantonness that is necessary for a claim of intentional infliction of emotional distress." *Hill*, supra at 617 (1) (a) (citations omitted). Likewise, the conduct of the appellees in this case, while even if insensitive or negligent, do "not rise to the level of outrageousness necessary to sustain a claim for intentional infliction of emotional distress. [Cits.]" *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 436 (541 SE2d 66) (2000). See also *Roddy.*, supra at 205 (tort of intentional infliction of emotional distress is reserved for instances in which a defendant intended to harm the plaintiff).

5. *Trespass*.

The appellants' claim that Land committed a trespass in violation of OCGA § 51-9-1 when he came back to and entered Justice's house in order to return the urn containing the ashes and place it on the living room mantel is entirely without merit. "[T]here is no evidence on the present record that [Land] refused to leave the house or realty after being asked to leave, or that [he] interfered with [Justice's] possessory

interest in the realty. Accordingly, the trial court correctly found there was no claim for trespass under OCGA § 51-9-1." *Udoinyion v. Re/Max of Atlanta*, 289 Ga. App. 580, 583 (657 SE2d 644) (2008) (citations omitted).

*Judgment affirmed in part and reversed in part. Andrews, P. J.,concurs. Ray, J., concurs fully in Divisions 1, 2, 3, and 4, and in the judgement only in Division 5.*