**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**December 21, 2020**

# In the Court of Appeals of Georgia

A20A1632. MOORE v. LOVEIN FUNERAL HOME, INC. et al.

GOBEIL, Judge.

Darrell Ken Moore filed suit against Robert S. Lovein, Jr. ("Lovein") and Lovein Funeral Home, Inc. (the "Funeral Home,")[1] (collectively, the "Defendants"), alleging in relevant part that he never authorized the Defendants to send part of his late wife's, Pauline Moore's ("Pauline") cremated remains to Kenneth Howard.[2] The Defendants moved for summary judgment, which the trial court granted. In the instant appeal, Moore argues that the trial court erred in granting the Defendants' motion for summary judgment, as he put forth sufficient evidence to support his claims for:

---

[1] Lovein, a licensed funeral director, co-owns the Funeral Home with his father, Robert S. Lovein, Sr.

[2] Howard is Pauline's son and Moore's step-son.

(1) breach of contract, (2) tortious interference with burial rights, (3) intentional infliction of emotional distress, (4) fraud, and (5) negligent misrepresentation. For the reasons that follow, we affirm the trial court's grant of summary judgment to the Defendants on Moore's claims for intentional infliction of emotional distress, fraud, and negligent misrepresentation, but we reverse the grant of summary judgment on his claims for breach of contract and tortious interference with burial rights.

> Summary judgment is appropriate if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party.

*Forsyth County v. Waterscape Svcs., LLC*, 303 Ga. App. 623, 623-624 (694 SE2d 102) (2010) (citation and punctuation omitted). So viewed, the record shows that Pauline died on February 19, 2015. Moore's sisters contacted the Funeral Home on his behalf to arrange crematory and memorial services for Pauline. The Funeral Home collected Pauline's body from her residence for transport to its place of business. On the date of his wife's death, February 19, Moore signed a contract with the Funeral Home, in which he agreed to pay $1,500 for a "direct cremation." The Funeral Home

2

provided Moore a discount from the usual cremation fee of $3,075 because Moore was having a "hard time," and he had used the Funeral Home in the past for other family members.

Two days after Pauline's death, the Funeral Home held a viewing for Pauline. After the viewing, Moore met with Lovein at the Funeral Home for an "arrangement conference."[3] Moore recalled that he told everyone present that he wanted Pauline to be cremated in keeping with her wishes. At the meeting, Lovein asked Moore what he wanted to do with the ashes after the cremation, to which Moore replied: "For the time being they all come to me." Because he was still so upset about Pauline's death, Moore had yet to decide what he was going to do with the ashes.

During the "arrangement conference," Moore signed a separate agreement with the crematory, South Georgia Crematory, LLC (the "Crematory"), titled "Authorization for Cremation and Disposition." The Funeral Home co-owns the Crematory with several other funeral homes. Lovein presented the contract with the Crematory to Moore for execution in his office at the Funeral Home, and went over each provision in the document with Moore. As relevant here, Moore initialed the

_____

[3] Based on the record, it appears that Moore's mother and sisters, as well as Howard, were present for parts of this meeting.

3

provision in the agreement that gave the Crematory permission to release Pauline's cremated remains to the Funeral Home. Lovein also signed the contract with the Crematory in his capacity as director of the Funeral Home.

After the cremation on February 23, Moore authorized his sister to collect Pauline's ashes from the Funeral Home and bring them to his house. Shortly thereafter, Howard's wife, Vicki Howard, called Moore and told him that Howard had received some of Pauline's ashes. This was when Moore first learned that the Funeral Home had not given him all of his late wife's ashes. In a phone call with Moore, Lovein admitted that he had mailed approximately one "teaspoon" of Pauline's ashes to Howard. Howard in turn spread the ashes over the graves of Pauline's parents and the Suwannee River, which he contended was in accordance with Pauline's wishes. Howard alleged that he was unaware that Moore did not want him to have any of his late mother's ashes.

In February 2017, Moore filed suit against the Defendants, raising claims for breach of contract, tortious interference with burial rights, intentional infliction of emotional distress, fraud, and negligent misrepresentation.[4] The Defendants moved

---

[4] Moore also raised a claim of tortious interference with contractual relations against Howard, alleging that Howard improperly asked the Defendants to send him some of Pauline's ashes, even though they "were contractually and statutorily

for summary judgment, which the trial court granted on all of Moore's claims.[5] The court certified its order as final under OCGA § 9-11-54 (b), and the instant appeal followed.

1. Moore argues that the trial court erred in granting summary judgment to the Defendants on his breach of contract claim because genuine issues of material fact remain as to whether the Funeral Home's failure to release to Moore all of Pauline's cremated remains constitutes a breach of the written agreements between the parties.

> The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken. A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as specified in the contract; or does some act that renders performance impossible.

obligated to deliver all of [Pauline's] remains to [Moore]." Howard did not join in the Defendants' summary judgment motion and is not a party to the instant appeal.

[5] In his reply brief, Moore asserts that the trial court failed to enter an order with specific findings of fact and conclusions of law despite his request to the trial court for such an order. In the first instance, this Court will not consider arguments raised for the first time in a reply brief. *Vann v. Finley*, 313 Ga. App. 153, 154 n. 2 (721 SE2d 156) (2011). In any event, "[t]he trial court is not required to make express findings of fact and conclusions of law in ruling on motions for summary judgment, although they are helpful to the appellate courts and instructive to the parties." *Lewis v. Rickenbaker*, 174 Ga. App. 371, 372 (1) (330 SE2d 140) (1985).

*UWork.com, Inc. v. Paragon Technologies, Inc.*, 321 Ga. App. 584, 590 (1) (740 SE2d 887) (2013) (citations and punctuation omitted).

As relevant here, Moore entered into two contracts: the general contract in which he agreed to pay the Funeral Home $1,500 for a "direct cremation." This contract did not include any details as to the Funeral Home's duties and obligations regarding the disposition of Pauline's cremated remains. Moore also signed a second agreement with the Crematory, titled "Authorization for Cremation and Disposition," with respect to the cremation and disposition of Pauline's ashes.

On appeal, Moore does not contend that the Crematory breached the terms of the crematory contract in the manner in which the cremation was performed or the delivery of the ashes to the Funeral Home. Rather, Moore argues that the Funeral Home exceeded the scope of its authority under the crematory contract when it took possession of Pauline's ashes from the Crematory and subsequently gave Howard a portion of her cremated remains without Moore's authorization.

> The interpretation of a contract is a question of law, unless the contract language presents an ambiguity that cannot be resolved by the rules of construction. The cardinal rule of construction is to ascertain the intent of the parties. Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. . . . Where ambiguities exist, the court may look outside the

written terms of the contract and consider all the surrounding circumstances to determine the parties' intent. Parol evidence may not be considered unless the written instrument is ambiguous.

*Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 339 Ga. App. 325, 329 (1) (791 SE2d 635) (2016) (citation and punctuation omitted). Importantly, the crematory contract did not specify whether the Defendants had the authority to give Howard some of Pauline's ashes upon receipt from the Crematory. Because the contract is ambiguous, we turn to parol evidence to ascertain the intent of the parties.

In his deposition, Lovein conceded that the crematory contract did not include any provisions "about allowing someone else to take [Pauline's cremated remains] or authorizing the mailing" of her ashes. In fact, Lovein testified that it was his understanding that the crematory contract required that he give Pauline's ashes to Moore following the cremation. Specifically, under a section titled "Order for Disposition," Moore authorized the Crematory to release the cremated remains to the "possession and custody of the Funeral Home." Additionally, under a section titled "Crematory Requirements, Procedures, and Policies," the agreement stated: "The cremation, processing, and disposition of the remains of [Pauline] authorized herein shall be performed in accordance with all governing laws, and the requirements,

procedures, and policies of the Crematory and the designated Funeral Home." See OCGA § 31-21-7 (b) (3) ("the right to control the disposition of the remains of a deceased person; the location, manner, and conditions of disposition; and arrangements for funeral goods and services to be provided vests in . . . [t]he surviving spouse of the decedent"). Lovein acknowledged that "once the cremation has been completed . . . the cremains are dispersed to the next of kin. That's the law." Indeed, Lovein specifically confirmed that Moore was the next of kin in this case.[6]

Moore maintains that he never authorized Lovein to deliver a portion of Pauline's ashes to Howard. In fact, Moore asserts that he clearly told Lovein that he wanted all of the ashes. By contrast, Lovein described that Howard approached Lovein and asked for a small portion of his mother's ashes. During his meeting with Moore on the day of the viewing, Lovein recalled that, although Moore initially told Lovein that he did not want to give any ashes to Howard, Moore eventually relented after Lovein reminded him that Howard was Pauline's son. Specifically, Lovein alleged that Moore told him, "Fine, just don't . . . I just don't want to know. Don't tell

---

[6] Of note, the crematory contract lists Moore as Pauline's spouse, but does not include her children as her surviving heirs.

me." Although the crematory contract does not include this "authorization,"[7] Lovein explained that it was not uncommon for him to distribute ashes to multiple family members without written approval.

Based on the contradiction in the evidence, "there is, at the very least, a genuine issue of material fact as to whether" the Defendants breached the terms of the crematory contract by distributing some of Pauline's ashes to Howard upon receipt from the Crematory, without Moore's authorization. *Justice v. SCI Georgia Funeral Svcs., Inc.*, 329 Ga. App. 635, 637 (1) (765 SE2d 778) (2014). See also *Ly v. Jimmy Carter Commons, LLC*, 286 Ga. 831, 833 (1) (691 SE2d 852) (2010) ("On summary judgment, a trial court is not authorized to resolve disputed issues of material fact.") (citation and punctuation omitted).

The Funeral Home counters that Moore failed to state a valid breach of contract claim because the Funeral Home was not a party to the crematory contract.[8] Based on

---

[7] Lovein stated that this portion of the discussion apparently took place with only Lovein and Moore present in the room.

[8] There is no contract between the Funeral Home and the Crematory. Rather, the Funeral Home pays a fee to the Crematory for each cremation completed. As part of its services, the Funeral Home picks up the ashes from the Crematory and then contacts the family for the next of kin or an authorized representative to come and pick up the ashes.

9

the record on appeal, the exact nature of the relationship between the Crematory and the Funeral Home remains unclear. Specifically, the Funeral Home is a co-owner of the Crematory along with several other funeral homes. By his own admission, Lovein, as an authorized representative of the Funeral Home, presented the agreement with the Crematory to Moore and went over each term in the agreement for Moore's approval, including that the Funeral Home "was responsible for making arrangements with [Moore] for the cremation of [Pauline]." Aside from Moore's signature, the only other signature appearing in the contract is Lovein's, on behalf of the Funeral Home, in two separate places. Importantly, in the contract, Moore explicitly "request[ed] and authorize[d the Funeral Home] to take possession of and make arrangements for the cremation of [Pauline's] remains by [the Crematory]." As such, a question of fact remains as to whether the Crematory was "acting as the undisclosed agent" of the Funeral Home in contracting with Moore for the cremation. *Chas. S. Martin Distributing Co. v. Foster*, 140 Ga. App. 12, 13 (230 SE2d 77) (1976). See also OCGA § 10-6-54 ("If an agent shall fail to disclose his principal," the contracting party may settle with either the agent or the principal); *Carpenter v. Cordele Elec. Supply*, 220 Ga. App. 548, 549 (2) (469 SE2d 799) (1996) ("Whether or not the fact of the agency and the identity of the principal were disclosed or known to the other

10

contracting party is a question of fact which may be shown by direct or circumstantial evidence.") (citation and punctuation omitted).

Finally, as the Defendants point out, Moore did not suffer actual damages because by his own admission he never paid the Funeral Home the $1,500 fee to arrange the cremation and memorial services. Nevertheless, where there exists evidence from which a jury could find that the defendant breached a contract,

> the defendant is not entitled to summary judgment on the claim, even if the plaintiff fails to present any admissible evidence to establish the amount of actual damages flowing from the breach. This is because, under OCGA § 13-6-6, in every case of breach of contract, the injured party has a right to damages, but, if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action.

*Eastview Healthcare, LLC v. Synertx, Inc.*, 296 Ga. App. 393, 399 (4) (674 SE2d 641) (2009) (citations and punctuation omitted). Here, even though there is no indication that Moore sustained actual damages arising from the alleged breach, such lack of evidence "does not constitute a viable basis for granting [the Defendants'] motion for summary judgment." Id. See also *Crippen v. Outback Steakhouse Intl., L.P.*, 321 Ga. App. 167, 170 (1) (741 SE2d 280) (2013) (citing OCGA § 13-6-6 for the proposition

11

that "a lack of damages would not be a bar to a breach of contract claim"). We thus reverse the trial court's grant of summary judgment on the breach of contract claim.

2. Moore argues the trial court erred in granting the Defendants' summary judgment motion on his tortious interference with burial rights claim because the Defendants "willfully and wantonly delivered a portion of [Pauline's] cremains to [ ] Howard, despite [Moore's] express directive to the contrary."

"In this state, an unlawful and unwarranted interference with the exercise of the right of burial is a tort. This right of burial belongs to the surviving spouse of the deceased and devolves upon the next of kin of the deceased only if no spouse survives." *Habersham Mem. Park, Inc. v. Moore*, 164 Ga. App. 676, 678 (1) (297 SE2d 315) (1982) (citation omitted). See also *In re Tri-States Crematory Litigation*, 215 FRD 660, 684 (II) (A) (4) (f) (2) (N.D. Ga. 2003) (recognizing that next of kin had standing to pursue a private right of action for tortious interference with burial rights against a crematory for allegedly mishandling decedent's remains). The Defendants do not dispute that Moore, as the surviving spouse, had the private right to bury or dispose of his late wife's remains. As such, "[the Defendants] owed [Moore] the duty not to wilfully or want only interfere with the burial of [Pauline]." *Pyle v. Pyle*, 243 Ga. App. 398, 400 (2) (531 SE2d 738) (2000).

12

> A demonstration of mere negligence is not sufficient to show wilful or wanton behavior. In order to prove wilful or wanton conduct, a plaintiff must demonstrate that a defendant's acts were such as to evidence a wilful intention to inflict the injury, or else were so reckless or so charged with indifference to the consequences as to justify finding a wantonness equivalent in spirit to actual intent.

*McNeal Loftis, Inc. v. Helmey*, 218 Ga. App. 628, 629 (462 SE2d 789) (1995) (citations and punctuation omitted). It is undisputed that the Defendants deliberately gave Howard some of Pauline's remains. Compare *Justice*, 329 Ga. App. at 637-638 (2) (affirming grant of summary judgment where there was no evidence that the funeral home "acted wilfully or wantonly[; r]ather, at most, the evidence shows that [it] acted negligently in failing to ensure that the cremated remains were in the urn during the memorial service"); *McNeal Loftis*, 218 Ga. App. at 629-630 (reversing denial of summary judgment on claim for tortious interference with burial rights where decedent's wife failed to show that cemetery owner wantonly interfered with burial of her husband by failing to have grave dug at time of burial, in view of evidence that cemetery owner's inspection of grave's location did not reveal that soil condition was poor, making digging of grave difficult, and that cemetery owner contacted funeral home upon discovering that grave would not be dug in time for

13

burial so as to prevent funeral party from coming to cemetery until grave had been prepared).

The Defendants counter that "[Moore's] acquiescence to sending [ ] Howard the ashes proves there was no 'willful or wanton' conduct." As previously discussed in Division 1, however, based on the differing accounts offered by Moore and Lovein, a question of fact remains as to whether Moore granted the Funeral Home permission to send Howard a portion of Pauline's ashes. Although the Defendants argue that their "compassion" in ensuring that Howard be granted his wish to have part of his late mother's remains was "not intended to inflict injury" on Moore, so as to rise to the level of wilful or wanton conduct, this is a credibility determination that belongs exclusively to the fact finder. See *K/C Ice, LLC v. Connell*, 352 Ga. App. 376, 378 (1) (835 SE2d 11) (2019) ("In deciding a motion for summary judgment, neither the trial court nor this Court can consider the credibility of witnesses; and a finder of fact must resolve the question of credibility and the conflicts in the evidence which it produces."). Because genuine issues of fact remain for resolution, we therefore reverse the trial court's grant of summary on Moore's claim for tortious interference with burial rights.

3. Moore alleges that the trial court erred in granting summary judgment to the Defendants on his claim for intentional infliction of emotional distress.

> To sustain a claim for intentional infliction of emotional distress, [Moore] must prove the following four elements: (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

*Hill v. City of Fort Valley*, 251 Ga. App. 615, 616 (1) (a) (554 SE2d 783) (2001) (citation and punctuation omitted).

> Extreme and outrageous mean exactly that: It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

15

*Plantation at Bay Creek Homeowners Assn. v. Glasier*, 349 Ga. App. 203, 211 (7) (825 SE2d 542) (2019) (citation, punctuation, and emphasis omitted).

In this case, "[e]ven assuming that the [D]efendants' actions can be characterized as wilful or wanton, [Moore's] claim for intentional infliction of emotional distress still must fail. To sustain such a claim, [Moore] must show that the conduct of the [D]efendants was directed towards [him]." *Hill*, 251 Ga. App. at 617 (1) (a). In his deposition, Lovein testified that he was trying to ensure that Howard, as Pauline's son, was granted his request to receive part of his mother's remains. Although there remains a question of fact as to whether Moore acquiesced to Howard receiving a part of Pauline's cremated remains, there is nothing in the record to suggest that the Defendants' conduct was directed specifically towards Moore with the intent to cause him distress. Id. Because Moore is unable to sustain a claim for intentional infliction of emotional distress, the trial court properly granted the Defendants' motion for summary judgment on this ground.

4. Moore also contends that the trial court erred in granting summary judgment to the Defendants on his claims for fraud and negligent misrepresentation. Specifically, Moore asserts that Lovein "falsely informed" him that he would receive all of Pauline's cremated remains, and Moore did not realize that the Funeral Home

had sent part of Pauline's remains to Howard until Howard's wife's phone call informed him of this fact.

As relevant here, "[t]he tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Crawford v. Williams*, 258 Ga. 806, 806 (375 SE2d 223) (1989). "The elements of a negligent misrepresentation claim are (1) a false representation of omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Lafontaine v. Alexander*, 343 Ga. App. 672, 678 (3) (808 SE2d 50) (2017) (citation and punctuation omitted).

Moore has failed to meet his burden to show that he relied on a misrepresentation by the Defendants. See *Pyle*, 243 Ga. App. at 401 (3) ("[A]ctionable fraud must be based upon a misrepresentation made to the defrauded party, and relied upon by the defrauded party.") (citation and punctuation omitted). Because there is no evidence in the record that the Defendants affirmatively told Moore that he would receive all of Pauline's cremated remains, and that he relied on that misrepresentation to his detriment, this contention is without merit. Rather, as previously discussed, the crux of the dispute between the parties is whether Moore

17

consented to the Defendants sending part of Pauline's cremated remains to Howard. The trial court therefore did not err in granting summary judgment to the Defendants on Moore's fraud and negligent misrepresentation claims.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Pipkin, J., concur.*